```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
MARSHALL GREENBERG,

                        Plaintiff,

        - against -                         ORDER

                                            CV 2010-0897 (JBW)(MDG)
BOVIS LEND LEASE, INC., et al.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - -X
```

This order sets forth and elaborates on rulings made at a conference held on June 15, 2012 with the parties.

Bovis' Motion to Quash

Defendant Bovis Lend Lease, Inc. ("Bovis") moves to quash a subpoena served by plaintiff on Dr. Robert Goldstein, who examined plaintiff following an incident in which plaintiff presented to Ray Master, Bovis' Site Safety manager, a note describing his depression and his suicide attempt. Ct. doc. 51 at 1-2. Bovis argues that Dr. Goldstein is protected from discovery as a non-testifying expert retained in anticipation of litigation and with the dual purpose of providing input for the business decision whether to let plaintiff return to work.

The work product doctrine provides qualified protection to documents and other tangible things "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3); see generally Hickman v. Taylor, 329 U.S. 495 (1947). The privilege "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman, 329

U.S. at 510-11).  The party claiming work product protection "bears the burden of establishing that the documents in question were 'prepared principally or exclusively to assist in anticipated or ongoing litigation.'"  Adlman, 134 F.3d at 1202 (quoting United States v. Construction Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)).

In determining whether material was prepared "in anticipation of litigation," the proper inquiry is "whether the documents were prepared 'because of' existing or expected litigation."  Adlman, 134 F.3d at 1198.  Documents are "deemed prepared in 'anticipation of litigation' if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Strougo v. Bea Assocs., 199 F.R.D. 515, 520-21 (S.D.N.Y. 2001) (quoting Adlman, 134 F.3d at 1202).  In other words, "the pertinent question is what would have happened had there been no litigation threat – that is, whether the party seeking work product protection would have generated these documents if it were acting solely for its business-related purposes." William A. Gross Const. Assoc. v. Am. Mfrs. Mut. Ins. Co., 262 F.R.D. 354, 360 (S.D.N.Y. 2009).

The deposition testimonies that Bovis cites in its supplemental submission clearly indicate that Bovis sought the examination of plaintiff only after learning of plaintiff's suicide attempt.  Ct. doc. 65 at 3.  Senior executive Dennis Prude testified that Ray Master was concerned about plaintiff's stability and ability to run the elevator car after being presented with plaintiff's note.  Prude had discussions with Master, James Abadie, former Principal-in-Charge of Bovis' New York office, and the Human Resources director about plaintiff.

2

Id. 3, 13-14, 18.  Subsequently, Abadie participated in making "a decision . . . in conjunction with Bovis' counsel, to conduct a 'medical evaluation of plaintiff." Id. at 3, 5.  Abadie confirmed that the purpose of the examination was to "make sure that there wouldn't be an incident with [plaintiff] running the car and that he was okay." Id. at 3, 10.  Under these circumstances, this Court finds that an evaluation would likely have been conducted "in the ordinary course of business . . . irrespective of litigation." Adlman at 1202.  The fact that plaintiff had filed a state-court action against Bovis shortly before the evaluation does not change this Court's analysis, since "[t]he mere relation of documents to litigation does not automatically endow those documents with privileged status." See The Shinnecock Indian Nation v. Kempthorne, 652 F.Supp.2d 345, 362 (E.D.N.Y. 2009).  It is understandable that Bovis would seek legal advice before taking any employment action involving the plaintiff, but this does not change the fact that the examination conducted by Dr. Goldstein arose from business concerns.  Although work product protection does not extend to Dr. Goldstein's examination, the legal advice and related discussion are confidential attorney-client communications and shall be protected, as discussed below.

This Court also finds significant that Dr. Goldstein is a medical doctor and, as such, is "presumably less involved in trial strategy than other types of experts, so that revealing [his] opinions and findings is not likely to intrude on counsel's thought process." Castillo v. Western Beef, Inc., 2005 WL 3113422 at *3 (E.D.N.Y. Nov. 21, 2005).  In addition, Federal Rule of Civil Procedure 35 entitles a party to depose an examining physician and to receive any notes, data or other documents created in connection with the examination.  See Fed.R.Civ.P.

3

35(b)(1); see also Castillo at *2-*3.  This entitlement survives even where the examination was conducted before litigation commenced and is consented to by the parties without a court order. Id.

Therefore, defendant Bovis must produce all of Dr. Goldstein's notes that relate to plaintiff and any recording of the examination.  This is without prejudice to the right of Dr. Goldstein and Bovis to redact any protected attorney-client communications.  However, plaintiff's request for a deposition of Dr. Goldstein is denied.  Since Bovis does not claim that its actions were impacted by the results of the examination, this aspect of discovery would be tangential to the issues raised in this lawsuit.  This ruling is without prejudice to plaintiff seeking a deposition if he is able to produce additional and substantial evidence that the testimony of Dr. Goldstein would be relevant to the merits of this action.  See Travelers Cas. & Sur. Co. v. J.D. Elliott & Co., 2004 WL 2339549 at *2 (S.D.N.Y. 2004) (a court may limit the scope of discovery of an expert's work where expert may be retained solely for business and later for litigation or may be performing ordinary work and litigation work simultaneously).

Plaintiff's motion to compel

Plaintiff moves to compel Bovis to respond to plaintiff's second set of discovery demands which essentially concern information as to investigations and proceedings regarding criminal activity of Bovis (Interrogatory 1, 3) and James Abadie (Interrogatory 2).  Plaintiff points to the fact that "Bovis had paid a $5 million fine to the City of New York in connection with an inflated overtime scheme involving public projects" and thus seeks the discovery because the work site at issue in this action

was a public project. Ct. doc. 67 at 1. Plaintiff states that he seeks the information both for impeachment purposes and to challenge Bovis' affirmative defense that it has a valid anti-discrimination policy. As to the latter, plaintiff argues that information concerning Bovis's fraudulent billing and other work site practices pertaining to minority business enterprises may yield information which casts doubt on Bovis' claim of good faith in complying with antidiscrimination statutes and show its "cynical attitude toward workplace diversity." Ct. doc. 17 at 3.

This Court agrees that plaintiff may be entitled to discovery of information to impeach the credibility of the Bovis. Courts have recognized that prior act evidence may be used for impeachment and need not be substantiated in the form of convictions or disciplinary action. See, e.g., Terra Capital Assocs. v. Verizon Pennsylvania, Inc., 2010 WL 2509975 at *13 (W.D.N.Y. June 16, 2010); Linares v. Mahunik, 2008 WL 2704895 at *3 (N.D.N.Y. July 7, 2008) ("Past complaints against [defendant] regarding retaliation could be used by plaintiff to attack [defendant's] credibility or to impeach his testimony"). Discovery may be permitted even as to allegations that were not substantiated. Pacheco v. City of New York, 234 F.R.D. 53, 54 (E.D.N.Y. 2006).

In Interrogatory 1, plaintiff seeks information as to misconduct by employees of Bovis relating to the Deutsche Bank demolition project. This request is too broad and reaches beyond potential impeachment evidence admissible under Federal Rule of Evidence 608(b). This Rule permits inquiry into a "witness' character for truthfulness . . . on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . " Fed. R. Evid. 608(b) (emphasis added). As framed, Interrogatory No. 1 is not limited to impeachment

5

evidence of potential witnesses and parties. Thus, this Interrogatory is limited to Bovis employees who are involved in this case as witnesses and employees or who may be viewed as acting on behalf of the New York office of Bovis in a managerial capacity -- in other words, employees who could be considered Rule 30(b)(6) witnesses. Moreover, because impeachment evidence may be used only to attack a witness's character for truthfulness, "racketeering" is hereby removed from the list of crimes covered by the discovery requests at issue. "Racketeering" may encompass crimes not pertaining to untruthfulness and the underlying crimes concerning truthfulness are already covered by the interrogatory.

Since plaintiff is in the best position to determine which of Bovis' employee may be witnesses at trial, plaintiff shall to produce a list by June 20, 2011 identifying all employees he believes may be called at trial. Defendant Bovis must respond by June 29, 2011 with a list identifying the investigations, charges, complaints and criminal, civil or administrative proceedings relating to allegations relating to the Deutsche Bank demolition project that have been pursued against the designated employees. Since the information is sought for impeachment of the employees, Bovis does not need to produce every document in a pending proceeding, but must produce the documents which are sufficient to disclose the nature and extent of allegations against a prospective Bovis employee witness, including charging documents, target letters and complaints. Such documents must be produced as promptly as possible beginning June 29, 2012 and, if necessary, on a rolling basis thereafter.

In Interrogatory 3, plaintiff requests discovery of all criminal convictions of Bovis. Courts routinely allow discovery of criminal convictions of a party or witness. See 8 Charles

6

Alan Wright, et al., Federal Prac. & Proc. § 2015 (3d ed.). Under Federal Rule of Evidence 609, "convictions relating to dishonesty and false statements are admissible without regard to the degree of punishment or the Rule 403 balance." Edwards v. Ctr. Moriches Union Free School Dist., 2009 WL 604928 at *2 (E.D.N.Y. Mar. 9, 2009). However, plaintiff's interrogatory is too broad since it lacks a temporal or geographical limitation. Since the claims in this case concern the treatment of plaintiff by the New York office of Bovis, Interrogatory No. 3 is hereby limited to the criminal convictions of Bovis relating to conduct of its New York office. In addition, given the presumptive 10 year limit in Rule 609(b), the interrogatory is further limited to discovery of convictions that are not more than 15 years old, as calculated under that Rule.

Finally, as to scheduling, the parties are reminded that they are expected to cooperate in scheduling the remaining depositions and accounting for the time difference with respect to any deposition of deposition of Ray Master.

**SO ORDERED.**

Dated:   Brooklyn, New York
         June 21, 2012

/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE