UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARSHALL GREENBERG,

    Plaintiff,

– against –

BOVIS LEND LEASE, LMB, INC. and INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14-14B, THE JOHN GALT CORP., REGIONAL SCAFFOLDING & HOISTING CO., INC. and LVI ENVIRONMENTAL SERVICES, INC.,

    Defendants.

MEMORANDUM, ORDER & JUDGMENT

10-CV-0897



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 13 2013 ★
BROOKLYN OFFICE

### Table of Contents

I.   Introduction ............................................................................................................ 1

II.   Facts and Procedural History ................................................................................ 2

III.   Law ........................................................................................................................ 6

   a.   Summary Judgment Standard ......................................................................... 6

   b.   Duty of Fair Representation ........................................................................... 7

IV.   Application of Law to Facts ................................................................................ 10

V.   Conclusion ........................................................................................................... 12

### I. Introduction

Plaintiff, formerly a hoist operator at the Deutsche Bank work site in Manhattan, sued his employers and union in connection with his employment and termination. He settled all claims with those who employed him. Remaining are allegations that the union breached its duty of fair representation. The union moved for summary judgment. Its motion is granted.



## II. Facts and Procedural History

Plaintiff was a member of defendant Local 14-14B of the International Union of Operating Engineers ("Local 14"). Pl. Rule 56.1 Counterstatement of Material Disputed Facts ("Pl. 56.1 Ctrstmt.") ¶ 1, Apr. 10, 2013, ECF No. 111. Local 14 is a labor organization that represents construction equipment operators in New York City. *Id.* ¶ 2.

In March 2006, Regional Scaffolding & Hoisting Co., Inc. ("Regional") and the John Galt Corp. ("John Galt"), affiliated entities, hired plaintiff to assist with the demolition of the Deutsche Bank Building in Manhattan. *See id.* ¶¶ 3, 4, 7. The building had been severely damaged by the September 11, 2001 terrorist attacks on the World Trade Center. He began working as a hoist operator for John Galt on March 27, 2006. *Id.* ¶ 5.

On August 18, 2007, a fire occurred at the project site. *Id.* ¶ 8. It damaged and rendered inoperable the hoist on the southside shaft of the work site. *See id.* ¶ 9. Plaintiff was the last engineer to operate the shaft on the day of the fire. *Id.* When the shaft was taken out of service, defendant John Galt terminated the plaintiff's employment. *See* Def. Mem. of Law in Supp. of Def. Mot. for Summ. J. ("Def. Mem."), at 6-8, Mar. 19, 2013, ECF No. 104.

On August 21, 2007, Greenberg met with a representative of Local 14 and demanded that the union advocate for his immediate return to a job on the project. Pl. 56.1 Ctrstmt. ¶ 11. The representative explained to him that this was not possible and that plaintiff's right to return was governed by union by-laws. *Id.* ¶¶ 11-12; Def. Mem. at 6-8 (citing Steinberg Aff. I, By-laws, Art. IX Section 1); Manley Aff. ¶¶ 10-12, Mar. 19, 2013, ECF No. 101. Plaintiff was told that under the by-laws he had a claim to a hoist operator position on the southside shaft and was entitled to return to that job as soon as the shaft resumed service. *See* Def. Mem. at 7-8 (citing Bylaws, Art. IX Section 1); Manley Aff. ¶¶ 10-12. At the conclusion of his meeting with the

2

union representative and pursuant to the by-laws, plaintiff completed a Job Claim Form, which memorialized his right to return to work when the south shaft became operational. Pl. 56.1 Ctrstmt. ¶ 13; Steinberg Aff. Ex. H, Job Claim Form, Mar. 19, 2013, ECF No. 103.

Plaintiff chose not to exercise his rights to contest the union representative's decision on this issue; he did not appeal to the union's administrative body. Manley Aff. ¶ 13. Approximately six months later he filed an unfair labor practice charge with the National Labor Relations Board. Pl. 56.1 Ctrstmt. ¶ 19. He alleged that the union had failed to represent him in his termination by defendant John Galt. *Id.* ¶ 20. After two months plaintiff withdrew the charge on April 24, 2008. *Id.* ¶ 21.

When service was resumed on the southside shaft on April 28, 2008, the union successfully advocated for plaintiff's return to his position as hoist operator. Def. Mem. at 8; Pl. 56.1 Ctrstmt. ¶ 24; Manley Aff. ¶ 16. By this time defendant Bovis Lend Lease LMB, Inc. ("Bovis") was the contractor for the Deutsche Bank demolition. *See* Pl. 56.1 Ctrstmt. ¶ 24. It had entered into a collective bargaining agreement with Local 14, and plaintiff returned to his job as an employee of Bovis. *Id.* ¶¶ 24, 28; Steinberg Aff. Ex. P, Agreement between Contractors' Association of Greater New York, Inc. and International union of Operating Engineers Local 14-14B ("Collective Bargaining Agreement").

On September 22, 2008, Bovis relieved plaintiff from his position at the job site. Pl. 56.1 Ctrstmt. ¶¶25-26; Pl. Mem. of Law in Opp. to Def. Mot. for Summ. J. ("Pl. Mem."), at 3-4, Apr. 10, 2013. Four days earlier it had received a handwritten note from him threatening suicide because of what he claimed was work-related stress and harassment. Pl. 56.1 Ctrstmt. ¶ 26. Given its concerns about plaintiff's mental health and overall well-being on a job involving the safety of many people, Local 14 did not object to plaintiff's removal by Bovis. Def. Mem. at 9;

3

Manley Aff. ¶ 18. The union also concluded that under the collective bargaining agreement Bovis had sole authority to manage its operations, including hiring and firing employees, and had therefore acted within its rights. *See* Def. Mem. at 9 (citing Steinberg Aff. Ex. P., Collective Bargaining Agreement, Article II, Section 1); Manley Aff. ¶ 18.

In October 2008 the plaintiff requested that Local 14 seek to have Bovis place him on administrative leave and pay his fringe benefits. Def. Mem., at 9-10; Steinberg Aff. Ex Q. Local 14 declined to do so. It informed plaintiff that administrative leave was not provided for in the collective bargaining agreement. Def. Mem., at 9-10; Steinberg Aff. Ex Q. According to the union, any agreement on administrative leave constituted a private and independent arrangement between the plaintiff and Bovis to which it objected. *See* Steinberg Aff., Exs. S, T; Pl. 56.1 Ctrstmt. ¶ 30. Local 14 also refused to advocate on the plaintiff's behalf for fringe benefits because, under the applicable union policies, their payments were not justified when an employee was no longer performing any work for an employer. *See* Def. Mem. at 19.

In November 2008, Bovis decided to place the plaintiff on paid administrative leave with fringe benefit contributions. Pl. 56.1 Ctrstmt. ¶¶ 29, 31. This arrangement continued until May 4, 2009, when Bovis ended plaintiff's administrative leave and ended his employment. *See* Pl. 56.1 Ctrstmt. ¶ 34.

On May 7, 2009, the plaintiff met with representatives of Local 14. *Id.* ¶ 35. He demanded that the union persuade Bovis to either re-hire him for work at the Deutsche Bank project site, or resume his paid administrative leave. *Id.* The union refused. *Id.* ¶ 36. It informed him that under the union by-laws it could not advocate for his return to the work site because his former position as hoist operator for the south-side shaft was no longer available; the hoist had been taken down. *See* Def. Mem., at 10. The union also informed both the plaintiff and Bovis that it

4

would not negotiate any extension of plaintiff's administrative leave because that was a private arrangement outside the boundaries of the collective bargaining agreement. *See* Def. Mem., at 10; Steinberg Aff. Exs. R, S.

Plaintiff appealed from the union's decision to the Local 14 Executive Board on June 4, 2009, seeking his return to the job. Pl. 56.1 Ctrstmt. ¶ 38-39. He appeared before the Executive Board on September 1, 2009. *Id.* ¶ 40. On the same day, the Executive Board informed the plaintiff that the union's by-laws had been properly applied, and that plaintiff was not entitled to further employment at the Deutsche Bank project. *See id.* ¶ 41; Def. Mem. at 11. Plaintiff failed to appeal this decision to the General Executive Board of the International Union of Operating Engineers. Pl. 56.1 Ctrstmt. ¶ 42.

Plaintiff then filed suit against his former employers and the union on March 1, 2010. He alleged that the contractors wrongfully terminated his employment and subjected him to discrimination and a hostile work environment based on his ethnicity. All claims against the employers were settled by a substantial cash payment. *See, e.g.*, Pl. 56.1 Ctstmt. ¶ 47.

Presently before the court is plaintiff's claim that the union breached its duty of fair representation by failing to advocate for his return to the work site in May 2009. *See* Pl. Mem. at 12.

It is plaintiff's contention that the union had no legitimate basis to refuse to pursue his job reinstatement. He asserts that by agreement with the union he was hired to operate the hoist on the *northside* shaft of the project site until it was taken out of service. *See* Pl. 56.1 Ctrstmt. ¶ 52; Pl. Mem., at 12-13. Prior to starting the job in 2006, he alleges, he and his father met with delegates from Local 14. *See id.* ¶¶ 48-53. According to the plaintiff, it was at this meeting that the union expressly agreed to keep him employed on the project so long as the northside shaft

5

was operational. *See* Pl. Mem. at 2, 7-8. In addition, the union allegedly informed him that employee layoffs would be done in reverse chronological order—since he was the second engineer hired as a hoist operator for the project, he would be the second to last engineer to be removed from the site. *See* Pl. 56.1 Ctrstmt. ¶ 51-54; Pl. Mem. at 7-9.

According to the plaintiff, the union breached its duty of fair representation by failing to seek his job reinstatement in accordance with the agreement they allegedly made with him when he was first hired for the project. *See* Pl. Mem. at 14-17. He asserts that despite its stated justifications, the reason the union did not advocate on his behalf was as retaliation for the complaints he had made as an employee about alleged safety violations at the work site. *See* Pl. Mem. at 3, 14, 16; Pl. 56.1 Ctrstmt. ¶ 56.

### III.   Law

#### a. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). Summary judgment is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255. Evidence offered or pointed to in order to demonstrate a genuine dispute regarding a material fact may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Vill. Of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see Del. & Hudson Ry. V. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue"). If the non-movant fails "to

come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on" an essential element of the claim, summary judgment is granted. *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992). *See e.g., Anderson*, 477 U.S. at 248-49.

### b. Duty of Fair Representation

"A union…has a duty to represent fairly all employees subject to the collective bargaining agreement." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). This duty applies to the negotiation, administration, and enforcement of the agreement. *Id.* "Judicial review of union action, however, must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Id.* (internal citation omitted).

The duty of fair representation is breached by a union "when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Pinkney v. Progressive Home Health Services*, 367 Fed. Appx. 210, 212 (2d Cir. 2010) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Its behavior is arbitrary only if it is "so far outside a 'wide range of reasonableness,'…as to be irrational." *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). The union must have engaged in fraudulent, deceitful, dishonest, or other intentionally misleading conduct. *See Spellacy*, 156 F.3d at 126; *Ryan v. New York Newspaper Printing*, 590 F.2d 451, 455 (2d Cir. 1979). "To survive a motion for summary judgment, a plaintiff alleging a breach of the duty of fair representation must set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion." *Arteaga v. Bevona*, 21 F.Supp.2d 198, 204 (E.D.N.Y. 1998).

"[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153-54 (2d Cir. 1994). "[W]hen a union, after a good faith investigation of the merits of the grievance, concludes that the claim is unsubstantial, and refuses to encumber further its grievance channels by continuing to process a nonmeritorious claim, its duty of fair representation is satisfied and no claim against it may be brought." *Taylor v. MCI, Int'l.*, 215 F.Supp.2d 347, 350 (S.D.N.Y. 2002). *See Adonna v. United Elec., Radio and Machine Workers of Am. Local 243*, 2011 WL 721525, No. 3:08-cv-01245 (VLB), at *10 (D. Conn. Feb. 23, 2011) ("[A] union is only required to make decisions regarding the merits of a grievance in a good faith, and non-arbitrary manner.").

Since the duty of fair representation involves the enforcement of a collective bargaining agreement, it can only arise in circumstances involving a union, employee, and employer. *Price v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 795 F.2d 1128, 1134 (2d Cir. 1986), *vacated on other grounds*, 487 U.S. 1229 (1988). "[U]nion actions that neither involve the employer nor have an effect on the conditions of employment are considered internal union matters, excluded from the duty of fair representation." *Cantwell v. Special and Superior Officers Benev. Ass'n*, 2011 WL 1104176, No. 07-CV-1154 (ENV), at *3 (Mar. 23, 2011).

Before seeking judicial relief, a plaintiff may be required to exhaust intraunion remedies, or show that such internal resolution would have been futile, inadequate, or unreasonable. *See Cruz*, 34 F.3d at 1154 (citing *Clayton v. United Auto. Workers,* 451 U.S. 679 (1981)); *Johnson v.*

*General Motors*, 641 F.2d 1075, 1078-80 (2d Cir. 1981). Requiring the exhaustion of union remedies is in the discretion of the court. *Cruz*, 34 F.3d at 1154.

The statute of limitations for a duty of fair representation claim is six months from "when a plaintiff knows or reasonably should know that the union has breached its duty...." *Flanigan v. Int'l. Bhd. of Teamsters, Chauffeurs, Warehouseman & Helpers of America), Truck Drivers Local 671*, 942 F.2d 824, 827 (2d Cir. 1991); *Eatz v. DME Unit of Local Union No. 3 of Int'l. Bhd. of Elec. Workers*, 794 F.2d 29, 33 (2d Cir. 1986) ("A cause of action based on the duty of fair representation accrues when the union members know or reasonably should know that a breach of that duty has occurred.") (citing *Santos v. District Council*, 619 F.2d 963, 969 (2d Cir. 1980)). "Where a union refuses or neglects to assist a union member, decides to stop assisting a union member, or acts against the interests of a member, a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989).

This six-month statutory period is tolled while plaintiff seeks to resolve the claim through internal union remedies. *See e.g., Tobin v. Barry*, 678 F.Supp. 1018, 1022 (S.D.N.Y. 1987) ("[T]he statute would be tolled while the plaintiffs make a bona fide effort to exhaust their intraunion remedies."). The tolling ends when plaintiff "knew or reasonably should have known that [the internal union] appeal had been rejected." *Tobin*, 678 F.Supp. at 1022. *See Sheehan v. U.S. Postal Serv.*, 6 F.Supp. 2d 141, 146 (N.D.N.Y. 1997) ("Courts have repeatedly held that the statute of limitations is not tolled after such time as the plaintiff knows or has reason to know that the union will not further pursue a grievance.").

9

### IV. Application of Law to Facts

"Plaintiff acknowledges that his only claim against the Union arises from its failure to take any action on his behalf when he sought to be reinstated to the site in May 2009, when he was taken off administrative leave." Pl. Mem. at 12.

It is assumed that this claim is still viable under the six-month statute of limitations, tolled during the pendency of plaintiff's intraunion appeal. Plaintiff was terminated, and the union decided against pursuing his case any further, in May 2009. *See* Pl. 56.1 Ctrstmt. ¶¶ 35-36; Def. Mem. at 10. This decision was appealed by plaintiff to the Executive Board of Local 14. His appeal was heard and rejected by the Executive Board on September 1, 2009. *See* Pl. 56.1 Ctrstmt. ¶¶ 38-42. Greenberg filed suit exactly six months later, on March 1, 2010.

To the extent that plaintiff claims that the union's actions in response to his termination in 2007 and then in 2008—namely its refusal to advocate on his behalf in each instance—were also breaches of the duty of fair representation, those causes of action are time-barred. In each of those instances plaintiff was aware of the union's decision not to pursue the matters any further with the employer well before the six-month period that preceded the commencement of this lawsuit in 2010.

Although plaintiff's claim against the union regarding his termination in 2009 may still be viable, his failure to exhaust his internal union remedies for that matter is not excused or excusable. Before seeking judicial resolution, he did not appeal to the union's national body (General Executive Board), as required by the union by-laws and constitution. *See* Manley Aff. ¶ 24; Steinberg Aff. Ex. I, By-laws, Art. IX, Section 4; Ex. J, Constitution of International Union of Operating Engineers, Art. XVII. Although defendant bears the ultimate burden of demonstrating that the union's internal remedies would not have been futile, unreasonable, or

10

inadequate, *e.g.*, *Rodriguez v. Intl. Bhd. of Teamsters*, 1999 WL 816182, No. 98 Civ. 8849 (JSR), at *4 (S.D.N.Y. Oct. 13, 1999), plaintiff does not make any assertions, and there is nothing in the record, that would suggest that an intraunion appeal would not be treated appropriately.

Even if plaintiff's failure to exhaust his remedies is excusable, his underlying claim against the union lacks merit. Defendant could not advocate for plaintiff's job reinstatement because the job for which he had a claim under the union by-laws no longer existed. It is undisputed that by May 2009 his former position as hoist operator for the southside shaft was no longer available since the shaft had been taken down. *See, e.g.*, Pl. 56.1 Ctrstmt. ¶¶ 72-73. There is no evidentiary basis to infer that the union's decision was arbitrary or in bad faith, or that its rationale was a pretext for retaliation. Local 14 investigated plaintiff's claim and concluded that it had no merit under the circumstances. Its interpretation of its by-laws is not unreasonable or disputed. *E.g.*, Pl. 56.1 Ctrstmt. ¶¶ 15-16. The union's decision not to pursue his reinstatement claim any further was supported by the uncontested facts. The union did not breach its duty of fair representation.

Plaintiff challenges the union's decision solely on the basis of an agreement allegedly made among himself, his father, and the union when they met prior to his employment in 2006. *See* Pl. 56.1 Ctrstmt. ¶¶ 48-54. He asserts that the union agreed he would be hired for a position on the northside shaft, and that he would remain employed so long as it was operational, regardless of what happened to the southside shaft. *See id.*; Pl. Mem. at 12-13. According to the plaintiff, the union also agreed plaintiff would be the second to last engineer removed from the site. *Id.*

Plaintiff provides no credible evidence that such an agreement about his employment and shaft assignment was ever made or that the union had any authority to make it. Even if there was an agreement, the evidence establishes that it was made only with the union representatives;

there is no indication that defendant Bovis or its predecessors were ever involved. *See, e.g.*, Def. Reply Mem. of Law in Further Supp. of Mot. for Summ. J., at 3-4, Apr. 22, 2013, ECF No. 114; O'Neill Decl. Ex. C ("Greenberg Dep.") 27:21-28:10, Apr. 11, 2013, ECF No. 112.

At most, plaintiff's assertions reveal an internal union dispute about the scope and duration of his employment. An internal union matter that did not even involve the employer who terminated him from the job does not give rise to a fair representation claim by the plaintiff. *See Price* 795 F.2d at 1134 (2d Cir. 1986); *Cantwell*, 2011 WL 1104176, at *3.

To the extent that plaintiff asserts that Local 14 also breached its duty by failing to advocate for an extension of his administrative leave were Bovis not to reinstate him, that claim is meritless. It is undisputed that administrative leave is not provided for in the collective bargaining agreement. *See* Pl. 56.1 Ctrstmt. ¶ 32; Steinberg Aff. Exs. R, S. Plaintiff cannot contend that the union acted in a discriminatory or arbitrary manner when it declined to secure on his behalf a benefit that was not collectively bargained for.

### V. Conclusion

Defendant's motion for summary judgment is granted. The case is dismissed. No costs or disbursements are awarded.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: June 12, 2013
      Brooklyn, New York